Justice W. JONES,
specially concurring.
I concur in the Court’s Opinion, but write separately in order to reconcile my dissent in State v. Windom, 150 Idaho 873, 253 P.3d 310 (2011), with the Court’s holding here in Section III.F.2 affirming Adameik’s fixed-life sentence. In Windom, I stated that the district court abused its discretion when it imposed a fixed-life sentence on a sixteen-year-old with a severe mental illness because an offender’s individual characteristics are relevant to the reprehensibility of a crime, contrary to the majority’s holding that these individual characteristics need not be taken into consideration in determining reprehensibility. 150 Idaho at 884-85, 253 P.3d at 321-22. As I explained there, “[a] crime is less reprehensible — and therefore potentially less deserving of severe retribution — if the criminal has personally mitigating circumstances.” Id. at 884, 253 P.3d at 321. The Court here analogizes this case to Windom and holds, consistent with the majority in Windom, that the nature of the crime alone is sufficient to support the fixed-life sentence. Under the facts of this particular case, I agree with the Court’s conclusion affirming the fixed-life sentence, but not its rationale.
The district court’s imposition of a fixed-life sentence here is consistent with my dissent in Windom because, given Adameik’s individual characteristics, the reprehensibility of this crime fully supports the fixed-life sentence. There are substantial and important differences between the facts of Windom and this case. The one main similarity between the two eases is that both Adameik and Windom were 16 years old and commit *488 ted murder in a particularly heinous way: Adamcik by stabbing a friend to death with a knife and Windom by beating his mother to death with a dumbbell. However, other than their respective ages at the time the crimes were committed, I do not find parallels in their individual characteristics such that I believe the district court abused its discretion in imposing a fixed-life sentence on Adamcik. Windom, on the other hand, had a psychotic disorder, paranoid schizophrenia, which caused him to kill his mother. Id. at 885-86, 253 P.3d at 322-23. Adamcik had no such psychotic disorder. The only evidence here relates to personality disorders, not psychosis. The record indicates that Adamcik was “immature” and that he may have had Attention Deficit Hyperactive Disorder and a learning disability, but there was no suggestion this caused him in any way to murder Stoddart. Adamcik’s doctor testified that Adamcik did not have any “pathological drive or pathological desire that he would personally harbor, that would have led him to these offenses,” and that there was no evidence of sociopathy.
Rather, as shown in Adamcik and Draper’s video tape, the evidence shows that Adamcik murdered Stoddart in an attempt to achieve fame in the same manner as the Columbine killers. While it is true that Windom had a similar obsession with serial killers and violence, as I wrote in that case, “[t]here is no indication that Ethan’s offensive actions, remorselessness, and grandiose statements were anything but his psychosis manifesting itself.” Id. at 886, 253 P.3d at 323. The facts here simply do not indicate that a serious mental illness caused Adamcik to kill.
Also, in contrast to Adamcik, Windom reported his homicidal thoughts to authority figures and continually sought help weeks before the murder for his mental illness which was driving him toward violence and homicide. Id. at 886-87, 253 P.3d at 323-24. Adamcik on the other hand secretly plotted and planned the murder days before the killing, which was to be a tune-up or practice before other intended killings.
Because I believe that the reprehensibility of the crime fully supports the fixed-life sentence imposed here, I agree with the Court that there is no need to consider rehabilitation in this case, and that Adamcik’s sentence was not an abuse of discretion and should be affirmed.